S13A0203. COLUMBUS BOARD OF TAX ASSESSORS
v. YEOMAN.
(744 SE2d 18)

NAHMIAS, Justice.

The trial court in this case ruled that there is no conflict between the 2010 amendment to OCGA § 48-5-2 (3) (the "2010 Amendment") and a 1981 local constitutional amendment (the "LCA") providing for the assessment of homestead property in Muscogee County for school and consolidated city-county government taxing purposes. The court further ruled that the 2010 Amendment controls the determination of the fair market value of appellee John Yeoman's recently-purchased homestead property. The Columbus Board of Tax Assessors (the "Board") appeals, but we affirm.

1. The LCA reads, in pertinent part, as follows:

> Subject to the conditions and limitations specified by law, homestead property in Muscogee County shall be valued for purposes of ad valorem taxation . . . based upon the fair market value of the property . . . as of January 1 of the first year when homestead exemption is allowed and claimed . . . ; or as of January 1 of the year following the last change of ownership . . . , whichever is later.

Ga. L. 1981, pp. 1926-1927. The effect of this law is to freeze the ad valorem tax value of homestead property in Muscogee County at its fair market value at the start of the year after a homestead exemption is allowed or after ownership of the property changes, thereby protecting homeowners against local property tax increases that result solely from an increase in the value of their homes over time. See generally *Columbus-Muscogee County Consolidated Govt. v. CM Tax Equalization, Inc.*, 276 Ga. 332 (579 SE2d 200) (2003) (upholding this LCA against constitutional challenges).

The LCA did not define "fair market value." However, in 1981, the predecessor statute to OCGA § 48-5-2 (3) defined the term primarily as "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale. . . ." The 2010 Amendment added the following sentence to OCGA § 48-5-2 (3):

> Notwithstanding any other provision of this chapter to the contrary, the transaction amount of the most recent arm's length, bona fide sale in any year shall be the maximum allowable fair market value for the next taxable year.

See Ga. L. 2010, pp. 1104, 1123.

In April 2010, John Yeoman purchased homestead property (a house) in Muscogee County for $665,000, in what the parties have stipulated was an arm's length, bona fide transaction. In March 2011, Yeoman filed a timely application for a homestead exemption for the 2011 tax year. On June 14, 2011, the Board issued an assessment setting the fair market value of the property at $1,622,013. Yeoman challenged the assessment and, upon review, the Board issued a new assessment on November 9, 2011, valuing the property at $769,350, without any explanation for the dramatic change. Yeoman appealed that assessment to the local board of equalization, which determined that the fair market value of the property was the sale price of $665,000, apparently relying on the 2010 Amendment.

The Board then appealed to the superior court, contending that the LCA required the Board to determine the fair market value of Yeoman's property as of January 1, 2011, thereby authorizing the Board to determine if there had been an increase in the fair market value in the eight months after Yeoman purchased the property; that the 2010 Amendment conflicted with the LCA by limiting the fair market value to the April 2010 sale price; and that the LCA controls over a general law when the two conflict. The trial court, however, ruled that there was no conflict between the LCA and the 2010

Amendment and that the 2010 Amendment controlled the determination of the fair market value of Yeoman's property. The Board appeals.

2. The Board is correct that a local constitutional amendment controls over a statute if the two conflict. See *Columbus-Muscogee County Consolidated Govt.*, 276 Ga. at 333-334 (holding that the LCA is part of the Georgia Constitution); Ga. Const. of 1983, Art. I, Sec. II, Par. V ("Legislative acts in violation of this Constitution . . . are void. . . ."). However, as the trial court correctly ruled, there is no such conflict in this case.

It is true that, when there has been a change of ownership of homestead property in Muscogee County, the Board is required by the LCA to determine the fair market value of that property as of January 1 of the next year. But the LCA itself does not specify *how* the Board is to determine that value. The LCA does expressly provide, however, that its terms are "[s]ubject to the conditions and limitations specified by law," and that law includes the state statute, OCGA § 48-5-2 (3), that directs how the fair market value of property in Georgia is to be determined. Thus, OCGA § 48-5-2 (3), as amended in 2010, does not prevent the Board from determining the fair market value of homestead property on January 1 of the applicable tax year; it provides the method for assessing that value as of that date. Indeed, the amended OCGA § 48-5-2 (3), with its focus on the actual market-determined value of property on the actual date the property was acquired, rather than its value as much as a year later, is entirely consistent with the LCA, which this Court has described as an "acquisition-value taxation scheme" that advances the local government's legitimate purposes of encouraging "neighborhood preservation, continuity and stability, . . . and the protection of reliance interests of existing homeowners." *Columbus-Muscogee County Consolidated Govt.*, 276 Ga. at 335. For these reasons, there is no conflict between the LCA and the 2010 Amendment to OCGA § 48-5-2 (3).

The Board notes that under this "mechanical" (we prefer "straightforward") application of the amended statute to assess the fair market value of newly purchased homestead property, assessments may be lower than the Board might prefer when home values in the area have trended up between the date of purchase and the first day of the next year. That may be, but the Board's dislike of the result reached by simply applying the clear language of the 2010 Amendment and the LCA to the facts of this case does not mean that our interpretation is unreasonable, much less absurd. To the contrary, as noted above, the 2010 Amendment is entirely consistent with the LCA's purpose of allowing homeowners to be able to predict the local tax assessment of their homes at the time they make the major

decision to purchase a house and of protecting homeowners from subsequent tax increases based solely on fluctuations in area property values.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 3, 2013.

*Robert R. Lomax*, for appellant.
*Hatcher, Stubbs, Land, Hollis & Rothschild, Gregory S. Ellington*, for appellee.